IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **JAMES W. PARSONS, III,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No.: _____ |
| ) | |
| **MARK PETTWAY, SHERIFF OF** ) | |
| **JEFFERSON COUNTY, ALABAMA,** ) | |
| **and ADVANCED CORRECTIONAL** ) | |
| **HEALTHCARE, INC.,** ) | |
| ) | |
| **Defendants.** ) | |

# COMPLAINT

For his complaint against Mark Pettway, Sheriff of Jefferson County, Alabama, and Advanced Correctional Healthcare, Inc. ("ACH"), James W. Parsons, III, on behalf of himself and the class he seeks to represent, states as follows:

## INTRODUCTION

This is an action pursuant to certain of the Enforcement Acts, as codified at 42 U.S.C. §§ 1983, for damages and injunctive relief against Sheriff Mark Pettway and ACH. Sheriff Pettway operates the Jefferson County, Alabama Jail, where ACH is under contract to provide, and purports to provide, medical care. However, due to the policies and customs of Pettway and ACH, medical care at the jail is so deficient as to constitute cruel and unusual punishment prohibited by the Fourth

and Eighth (and for pre-trial detainees, the Fourteenth) Amendments to the United States Constitution. In particular, and without limitation of the foregoing, Sheriff Pettway and ACH cause pre-trial detainees and inmates serving sentences after conviction to go without medications prescribed for the inmates either before or during detention, despite knowing full well that the medications are required for health and life, that refusing to administer the medications causes unnecessary pain and suffering, and that refusing the medications hastens death.  The refusal to prescribe medication often persists over the course of not merely days, but months, in the face of symptoms that even laypeople would recognize as medically hazardous.

## PARTIES

1. Plaintiff James Parsons, III, is a man over the age of 21 and is a resident of Blount County, Alabama.

2. Defendant Sheriff Mark Pettway is a man over the age of 21 and is the Sheriff of Jefferson County, Alabama.

3. Defendant Advanced Correctional Healthcare, Inc. is a foreign corporation having its principal place of business in Peoria, Illinois. At all times herein, Defendant ACH was acting under color of State law.

## JURISDICTION AND VENUE

4. Subject matter jurisdiction over Plaintiff's claims is conferred on this Court pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) and (4), to obtain relief for the deprivation of rights guaranteed by the Fourth, Eighth and Fourteenth Amendments to the Constitution of the United States, all pursuant to the Enforcement Acts found at 42 U.S.C. § 1983.

5. Venue is proper in the Southern Division pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2), in that the events or occurrences giving rise to Plaintiff's claims occurred in the United States District Court for the Northern District of Alabama, Southern Division, and in that the acts and omissions about which Plaintiff complains occurred in Jefferson County, Alabama.

## RULE 23 CLASS ALLEGATIONS

6. Plaintiff brings this action on behalf of himself and a class of all other persons similarly situated to him, consisting of detainees and inmates of the Jefferson County, Alabama Jail who have been prescribed medication for acute or chronic illness, or other medical conditions, but who do not receive such medications due to the policies of each of the Defendants.

(a) The number of absent class members is so great that it is impractical to bring individual actions, particularly given the constraints associated with persons actually in custody.

(b) There are issues of fact and law common to all class members, including but not limited to whether they were deprived of their prescription medications.

(c) The claims of the Plaintiff are typical of those of the absent class members.

(d) The representative party, James Parsons, III, will fairly and adequately protect the interests of the class.

7. The elements of a class action are satisfied pursuant to Fed.R.Civ.Pro. 23(b)(1)(A) & (B) because prosecuting separate actions by or against individual class members would create a risk of - -

(a) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the Defendants; and

(b) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications and would substantially impair or impede their ability to protect their interests.

8. In addition, the elements of a class action are satisfied pursuant to Fed.R.Civ.Pro. 23(b)(2) because the Defendants, who would oppose class action treatment, have acted or refused to act on grounds that apply generally to the class,

so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

## FACTS

9. Plaintiff is a single male who now suffers and at all relevant times has suffered from Multiple Sclerosis ("MS").

10. MS is a progressive disease with no known cure. MS physically manifests in lesions on the brain.

11. MS can nonetheless be managed over the long term if properly diagnosed and treated with appropriate medication. In particular, Plaintiff was receiving medications for his MS before his detention.

12. Shortly before he was incarcerated, Plaintiff had a magnetic resonance imaging (MRI) scan, which showed that Plaintiff's brain was largely, if not entirely, free of lesions.

13. On June 7, 2018, Plaintiff was detained in the Jefferson County Jail.

14. Prior to that time, Plaintiff was successfully managing his MS through medication.

15. After Plaintiff was detained, Plaintiff and Plaintiff's family both informed jailers (i.e., deputy sheriffs) and personnel at ACH that Plaintiff suffered from MS and that Plaintiff required medications to treat his MS.

16. Knowing that some of these medications are expensive, Plaintiff's mother, a registered nurse, purchased medication and delivered it to the jailers and ACH personnel to make sure that Plaintiff received the medication.

17. Further, Plaintiff and Plaintiff's family provided the jailers and ACH personnel with written confirmation from Plaintiff's physician that Plaintiff had MS.

18. His mother tried to bring his medications and a "walker"-type walking cane for him to use, but she was turned away and was not allowed to leave the walker or the medications.

19. Plaintiff filled out medication request forms, but Defendants did not respond to the forms or provide medication.

20. On June 18, 2018, Plaintiff's doctor Dr. Richard Diethelm wrote a letter to the jail staff informing them that Plaintiff was an MS patient and that the absence of medications would likely lead to a relapse. Plaintiff still did not receive his medications.

21. After June 18, 2018, Plaintiff filled out another medication request form and it was never answered.

22. Beginning on June 18, 2018, the changes in Plaintiff's body caused by the absence of his usual medications caused Plaintiff to soil himself in his jail cell. He was unable to control his bowels, yet was not provided with toilet paper or the

means to take a shower or otherwise clean himself. This was the direct result of not being able to have his medications.

23. Plaintiff filled out and submitted a grievance form. It was never answered.

24. Despite having actual, subjective knowledge of Plaintiff's MS and need for medication, the jailers and ACH refused to administer Plaintiff's medication.

25. There was no point in refusing Plaintiff's medication, apart from whatever desire the jailers or ACH had to inflict cruel and unusual punishment.

26. After Plaintiff had been in custody but deprived of his medication, he had another MRI scan, which found several lesions.

27. Plaintiff still did not get medicine during his detention.

28. After the COVID-19 crisis struck, Plaintiff was allowed to go home.

29. Plaintiff's MS symptoms have significantly aggravated since his detention began.

30. In particular, Plaintiff has significant numbness in his limbs and extremities, making it difficult for him to walk.

31. On June 29, 2018, Plaintiff bonded out of jail in Jefferson County. He was transported to the Blount County Correctional Facility, located in the City of Oneonta in Blount County, Alabama.

32. On the same day, June 29, 2018, Plaintiff was returned to Jefferson County.

33. He was immediately carried to St. Vincent's East hospital, where he stayed for a week due to his MS relapse. Plaintiff was subsequently returned to the Jail, but never received his medications.

34. No one acting for Sheriff Pettway or ACH ever disputed that Plaintiff had MS.

35. It is the responsibility of the Defendants to maintain and keep the Jefferson County jail in a safe and proper manner, such that conditions in the jail are compliant with standards established by and through the Eighth and Fourteenth Amendments.

36. Defendants had a duty to provide Plaintiff with his required medications during his incarceration. They did not do so.

37. The experiences of Plaintiff are typical of those experienced by detainees or inmates of the Jefferson County, Alabama jail who need prescription medications, especially when the conditions are chronic in nature. The following additional incidents occurred at the Jefferson County, Alabama jail. This is hardly an exhaustive list.

38. Inmate CF was detained on charges that she had a marijuana roach in her car when she was pulled over. Inmate CF suffers major depression, for which

she had been prescribed Welbutrin and Prozac, both of which are inexpensive psychotropic medications that are commonly available in generic forms. The jailer and ACH not only failed to administer the medications as prescribed, they refused her access to those medications "cold turkey," which is strongly contraindicated. When she became suicidal, they did not relent, but instead detained her in administrative segregation, where she could not even have a Bible.

39. Inmate NB was a man with significant depression and opioid addiction. Instead of treating his depression and addiction, jailers and ACH basically ignored him. He committed suicide on Thanksgiving Day 2019.

40. DH is an adult bi-polar man who managed his condition by monthly injections of medication prescribed for him. After he was detained, DH was not given his medication, which predictably led to his bi-polar symptoms reappearing.

41. FA is an inmate with acquired immune deficiency syndrome, or AIDS. FA is one of the longest surviving patients of the 1917 Clinic at UAB. FA manages to survive with AIDS by carefully following a complicated regimen of prescription medication. Even though FA and his family advised the jailers and ACH that FA had AIDs, the jailers and ACH refused to administer FA's medications.

42. DS was detained in the Jefferson County Jail while high on drugs. During his detention, he was denied the most basic medicine that would have kept

him from becoming dehydrated. After he lay on the floor for days, his kidneys failed and he was finally transported to a local hospital, where he has been continuously admitted since the end of February.

43. The deliberate indifference described herein is common where ACH provides medical care. Thus, in Madison County, Alabama, ACH provided the medical care at the jail operated by the Sheriff of Madison County, Alabama until the County Commission and the Sheriff terminated the contract and ACH paid over $400,000 for release of claims.

44. The practices described herein caused physical injury to Plaintiff, including but not limited to the appearance of lesions that would not have appeared at all or that would have appeared only much later.

45. Each of the Defendants acted under color of State law with regard to the acts or omissions described herein.

46. The acts and omissions described herein consisted of occasions with the policies and procedures adopted by each Defendant caused men and women to go without medical treatment when in fact each Defendant subjectively knew or, in the alternative, any layperson would have known that medical treatment was in fact necessary.

47. Plaintiff was subject to retaliation for his filing grievance forms for not receiving his medication.

48. Defendants denied Plaintiff's requests for medications because such was their practice for all inmates or detainees, except a limited number of persons who first presented symptoms while detained.

49. Defendants Pettway and ACH adopted a written policy and/or procedure or, alternatively, a pattern, practice, or custom authorized, ratified, and condoned by a final policy-maker so as to rise to the level of a written policy of refusing to provide mediation.

50. Defendants Pettway and ACH adopted a written policy and/or procedure or, alternatively, a pattern, practice, or custom authorized, ratified, and condoned by a final policy-maker so as to rise to the level of a written policy, of ignoring the medication needs of pre-trial detainees such as Plaintiff and those similarly situated to him.

51. Defendants Pettway and ACH adopted a written policy and/or procedure or, alternatively, a pattern, practice, or custom authorized, ratified, and condoned by a final policy-maker so as to rise to the level of a written policy, of providing medications only to pre-trial detainees whose medical condition arises while the detainee is in custody and not before.

52. Defendants Pettway and ACH adopted a written policy and/or procedure or, alternatively, a pattern, practice, or custom authorized, ratified, and condoned by a final policy-maker so as to rise to the level of a written policy, of

failing and refusing to provide medications to pre-trial detainees to address medical conditions which arose prior to detention by Defendants.

53. Defendants Pettway and ACH failed to train deputy sheriffs and employees under what circumstances to administer medications and to send pre-trial detainees to the hospital.

54. The acts and omissions of Pettway and ACH as recounted herein were and continue to be deliberately indifferent to the medical conditions of inmates and detainees.

55. The acts and omissions of the Pettway and ACH as recounted herein were wanton and willful.

56. The acts and omissions of the Pettway and ACH as recounted herein were committed with deliberate indifference to the federally-protected rights of Plaintiff and those similarly situated to him.

57. The acts and omissions, as recounted herein, of each of the Defendants caused Plaintiff to suffer actual physical injury, as well as mental anguish and emotional injury.

## COUNT ONE

### 42 U.S.C. § 1983

### Sheriff Pettway
### Damages

58. Plaintiff adopts and incorporates by reference paragraphs 1 through 57 of this Complaint.

59. The acts and omissions described herein, including but not limited to the policies and procedures adopted by Sheriff Pettway, have caused Plaintiff to suffer actual physical injuries including brain lesions, diminished eyesight, and difficulty in ambulating.

60. The acts and omissions described herein have caused Plaintiff to suffer mental anguish.

## COUNT TWO

### 42 U.S.C. § 1983

### Sheriff Pettway
### Injunctive Relief

61. Plaintiff adopts and incorporates by reference paragraphs 1 through 57 of this Complaint.

62. The cruel and unusual punishment inflicted on the detainees and inmates at the Jefferson County Jail are persistent and the treatment will not improve absent judicial intervention in the form of an equitable decree.

63. The detainees and inmates do not have an adequate remedy at law. Some of the inmates are literally dying and others are suffering irreversible injuries to their health.

64. A judicial decree merely banning cruel and unusual punishment in the form of refusing to administer medications prescribed to detainees and inmates would greatly ameliorate conditions in the jail and would at least prevent detainees and prisoners from having to suffer easily anticipated injuries caused by the simple fact that they are jailed in cruel and unusual conditions.

## COUNT THREE

### 42 U.S.C. § 1983

**Cruel and Unusual Punishment**
**ACH**
**Injunctive Relief**

65. Plaintiff adopts and incorporates by reference paragraphs 1 through 57 of this Complaint.

66. ACH adopted policies and procedures that caused Plaintiff to be deprived of prescription medication, despite actually knowing about the Plaintiff's need for the medication and having the medication in hand.

67. As a result, Plaintiff has suffered physical injury in the form of brain lesions, diminished eyesight, and difficulty in ambulating.

68. Plaintiff has also suffered mental anguish and emotional distress.

69. Monetary damages are not an adequate remedy for Plaintiff's injuries.

70. A judicial decree merely banning cruel and unusual punishment in the form of refusing to administer medications prescribed to detainees and inmates would greatly ameliorate conditions in the jail and would at least prevent detainees and prisoners from having to suffer easily anticipated injuries caused by the simple fact that they are jailed in cruel and unusual conditions.

## COUNT FOUR

### 42 U.S.C. § 1983

**Cruel and Unusual Punishment**
**ACH**
**Damages**

71. Plaintiff adopts and incorporates by reference paragraphs 1 through 57 of this Complaint.

72. ACH adopted policies and procedures that caused Plaintiff to be deprived of prescription medication, despite actually knowing about the Plaintiff's need for the medication and having the medication in hand.

73. As a result, Plaintiff has suffered physical injury in the form of brain lesions diminished eyesight, and difficulty in ambulating.

74. Plaintiff has also suffered mental anguish and emotional distress.

WHEREFORE, on behalf of himself and all other persons similarly situated to him, Plaintiff hereby demands compensatory damages, punitive damages, costs,

attorneys fees, and such equitable relief to which he may be entitled, including but not limited to a decree prohibiting Sheriff Mark Pettway and Advanced Correctional Healthcare, Inc., from failing to administer medications prescribed to detainees and inmates in the custody of Jefferson County, Alabama Jail.

**PLAINTIFF DEMANDS TRIAL BY JURY ON ALL ISSUES SO TRIABLE**

Respectfully submitted,

/s/ Frank Ozment
Frank Ozment (ASB-7203-N73J)
R. Taylor Abbot, Jr. (ASB-8578-B64R)
Frank Ozment Attorney at Law, LLC
217 Country Club Park, Box 501
Birmingham, Alabama 35213
205-413-9973
205-617-9714
frankozmentlaw@gmail.com
rtabbot1@gmail.com

***Attorneys for Plaintiff***

OF COUNSEL:

Andrew C. Allen (ASB-3867-E56A)
Law Offices of Andrew C. Allen, LLC
217 Country Club Park, Box 501
Birmingham, Alabama 35213
205-747-1903
aallen@acallenlaw.com

Michele E. Pate (ASB-4457-E49F)
Law Office of Michele E. Pate
P.O. Box 3391
Jasper, Alabama 35502
205-275-1700
mpatelaw@gmail.com



Defendants' Addresses:

Sheriff Mark Pettway
Jefferson County Sheriff's Office
2200 Reverend Abraham Woods Jr. Blvd.
Birmingham, Alabama 35203

Advanced Correctional Healthcare, Inc.
3922 W. Baring Trace
Peoria, Illinois 61615